UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

**DANIEL DAILEY and INSURANCE SALVAGE SERVICES, INC., a Minnesota corporation,**

Plaintiffs,

v.

**CITY OF LONG LAKE,**

Defendant.

Civil File No. 00-299 (JGL)

**ORDER**

APPEARANCES

Patrick Neaton, Esq., on behalf of Plaintiffs.

George C. Hoff, Esq., and Kimberly B. Kozar, Esq., on behalf of Defendant.

JONATHAN LEBEDOFF, United States Magistrate Judge

The above-entitled matter came on for hearing before the undersigned Magistrate Judge of District Court on December 8, 2000 on Defendant's motion for summary judgment. The parties have voluntarily consented to have the undersigned Magistrate Judge exercise jurisdiction and conduct any and all proceedings in this case including the entry of final judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73(b).

Defendant Long Lake moves for summary judgment pursuant to Fed. R. Civ. P. 56(c) on the grounds that no genuine issues of material

DEC 19 2000
FILED
FRANCIS E. DOSAL, CLERK DEC 19 2000
JUDGMENT ENTD
DEPUTY CLERK

fact exist and that Defendant is entitled to judgment as a matter of law. In particular, Defendant asserts that Plaintiffs' claim is barred by the doctrine of res judicata, but even if the claim was not precluded, Plaintiff's claim fails as a matter of law.

## I. RELEVANT FACTS

In deciding a motion for summary judgment, a court must view the facts and the inferences drawn from those facts in the light most favorable to the non-moving party. See Lower Brule Sioux Tribe v. South Dakota, 104 F.3d 1017, 1021 (8th Cir. 1997) (citations omitted). In this case, Plaintiffs Daniel Dailey and Insurance Salvage Services are the non-moving parties. The relevant undisputed facts of this case are as follows.

### A. Plaintiffs' Dealings with the Long Lake Planning Commission and City Council.

Plaintiff Dailey owns Plaintiff corporation, Insurance Salvage Services ("ISS"), which is an automobile auction and used automobile dealership located in the City of Long Lake's industrial district. ISS has held licenses for those business activities since 1987. In 1987, Long Lake also issued Plaintiffs a conditional use permit ("CUP"), which allowed Plaintiffs to install and maintain a six-foot chain link fence around the perimeter of the property rather than an eight-foot fence, which the City would normally require. City zoning ordinances require an eight-foot

fence in any industrial district property that abuts a residentially-zoned property.

In 1992, Long Lake reissued the CUP subject to three conditions: (1) keeping the fence in good repair and childproof, (2) keeping the cars in an orderly fashion, and (3) subject to annual inspections by the Public Works Department. In 1997, the City began a review of all previously issued CUPs. On September 4, 1997, City staff inspected the ISS property and determined that the fence was in disrepair and not in compliance with the conditions of the CUP. At a planning meeting on September 9, 1997, the Long Lake City Planner informed Mr. Dailey of necessary actions in order to bring the property into compliance with the CUP and that if Plaintiffs did not resolve the problem, the City would take formal action to revoke the CUP. City staff also advised Mr. Dailey that ISS met the City's definition of a junkyard.

On October 14, 1997, Mr. Dailey presented a plan to the Planning Commission to repair the fence, and he was given until November 12th to have the fence repaired. The Commission also observed that the parking areas were not in compliance with zoning ordinances. Also during this meeting, the Commission asked Mr. Dailey how they could work together to move the business elsewhere or phase out the business entirely within five years.

On December 5, 1997, City staff again inspected the fence and found that it remained in disrepair. On December 10, 1997, during a Long Lake Planning Commission meeting, Mr. Dailey informed the Commission that the fence had been repaired subsequent to the December 5th inspection. Nevertheless, the Commission recommended revocation of the CUP, and in January 1998, the Long Lake City Council revoked the CUP for the following reasons: (1) Plaintiffs' failure to maintain the fence in good repair; (2) Plaintiffs' failure to maintain the cars on the property in an orderly fashion; and (3) Plaintiffs' failure to satisfy the City's zoning requirements relating to surfacing, landscaping, and curbing parking areas. Nevertheless, the City never enforced the revocation of the CUP against Plaintiffs. On February 17, 1998, the City Council passed a resolution finding that the property met the definition of a junkyard and that Plaintiffs had unlawfully expanded ISS. The City told Plaintiffs that there was a citywide June 1, 1999 deadline to terminate any junkyards operating within the Long Lake Industrial District.

### B. **Plaintiffs' State Court Lawsuit Against the City of Long Lake.**

In February 1998, Plaintiffs brought a lawsuit in Hennepin County District Court against the City on the following grounds: (1) the City's revocation of the CUP was unlawful; (2) the City's junkyard ordinance was unconstitutional; (3) the City's enforcement of the junkyard

ordinance illegally discriminated against Plaintiffs; (4) estoppel; (5) the City unlawfully determined that ISS had expanded to a nonconforming use; (6) application of the junkyard ordinance to the property was unconstitutional; and (7) violations of 42 U.S.C. § 1983. Plaintiffs requested injunctive relief and damages. Before filing an answer, the City advised Plaintiffs that it would remove the case to federal court because of Plaintiffs' federal claims. In response, Plaintiffs "voluntarily dismissed" the § 1983 claim on March 5, 1998.

In April 1998, Plaintiffs filed a motion for a temporary injunction in Minnesota state court, which was granted in July 1998. The Honorable John J. Sommerville temporarily enjoined the City from revoking the CUP and from enforcing its junkyard ordinance against Plaintiffs. On November 15, 1999, Plaintiffs moved for partial summary judgment, and on December 9, 1999, Judge Sommerville granted the motion and found that Plaintiffs' business was not a junkyard or a nonconforming operation according to the City's ordinances. The remaining issue in the lawsuit, whether the City wrongfully revoked Plaintiffs' CUP, came on for trial on March 27, 2000. Judge Sommerville concluded that the City's reason for revoking the CUP was "because it wanted Plaintiffs to relocate their business outside the City of Long Lake," and that the City had no reasonable basis for revocation. A permanent

injunction was granted, and Plaintiffs' CUP was reinstated. Final judgment was entered on May 26, 2000.

**C. Plaintiffs' Present Suit Against the City in Federal Court.**

Plaintiffs commenced the present lawsuit in Hennepin County District Court in January 20, 2000, prior to the state court trial, seeking damages pursuant to 42 U.S.C. § 1983. The City removed the case to federal court. Plaintiff's Complaint essentially relates the events summarized above, and further alleges that the City, a governmental authority, has attempted to further its own interest in eliminating Plaintiffs from operating their business. Those acts, aver Plaintiffs, constitute interference with Plaintiffs' civil rights in violation of 42 U.S.C. § 1983. Plaintiffs request money damages in their prayer for relief.

Defendant Long Lake now moves for summary judgment on the basis that Plaintiffs' § 1983 claim arises from the same facts previously litigated in the earlier state court action. Defendant submits that the doctrine of res judicata provides that a state court judgment on the merits is an absolute bar to a second suit for the same cause of action including every matter which could have been litigated in the previous case. Plaintiffs raised a § 1983 claim in state court, purportedly based on the same facts as their other state claims, but then voluntarily dismissed the federal claim rather than endure removal to federal court. Thus,

Defendant argues that Plaintiffs' § 1983 claim merged into the final state judgment and may not be raised a second time. Even if Plaintiffs' claim was not barred, Defendant contends that there is no evidence to support a substantive due process claim under § 1983.

Plaintiffs respond that the current suit for compensatory damages is an entirely separate action from the prior state court case. Moreover, Plaintiffs submit that they have established facts sufficient to create an issue as to whether Defendant has deprived Plaintiffs of a legitimate property interest.

## II. DISCUSSION

### A. Standard of Review for Summary Judgment.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material facts and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A disputed fact is "material" if it must ultimately be resolved and if its resolution will determine the outcome of the case. See id. Materiality is determined by examining the substantive law of the claims. See id.

The non-moving party may not rest upon the pleadings alone as a response but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party may not rely on mere allegations or denials but must present specific facts. See id.; Lambert v. City of Dumas, 187 F.3d 931, 934 (8th Cir. 1999) (citations omitted). Additionally, the movant is entitled to summary judgment when the non-movant fails to establish the existence of an essential element of a claim on which that party has the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). No genuine issue of material fact exists absent such foundation because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

**B. Whether Plaintiff's § 1983 Claim is Barred by Res Judicata.**

In accordance with the Constitution's Full Faith and Credit Clause and the Federal Full Faith and Credit Act, 28 U.S.C. § 1738, "a federal court must give to a state court judgment the same preclusive effect as would be given that judgment under the law of the state in which the judgment was rendered." Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 80-81 (1984); see also U.S. Const., art. IV, § 1. Thus, this Court must apply the Minnesota doctrine of res judicata to the case at

hand, and if Plaintiffs' § 1983 claim would be barred in Minnesota state court, it is barred in this federal action. See Migra, 455 U.S. at 81.

Res judicata is a finality doctrine designed to prevent the relitigation of previously determined causes of action. See Dorso Trailer Sales, Inc. v. American Body and Trailer, Inc., 482 N.W.2d 771, 773-74 (Minn. 1992) (citation omitted). In Minnesota, res judicata is defined as follows:

> A judgment on the merits constitutes an absolute bar to a second suit for the same cause of action, and is conclusive between parties and privies, not only as to every other matter which was actually litigated, but also as to every matter which might have been litigated therein.

Veline v. Dahlquist, 66 N.W. 141, 142 (Minn. 1896) (emphasis added); see also Howe v. Nelson, 135 N.W.2d 687, 691 (Minn. 1965) (barring subsequent suits both as to matters actually litigated and as to claims or defenses that "might have been litigated"). Res judicata precludes a claim when (1) there has been a final judgment on the merits of a prior claim; (2) the same cause of action is involved; and (3) the parties are identical. See Beutz v. A.O. Smith Harvestore Prod., Inc., 416 N.W.2d 482, 484 (Minn. Ct. App 1988) (citing Minneapolis Auto Parts Co. v. City of Minneapolis, 739 F.2d 408, 409 (8th Cir. 1984)). In the present case, the parties agree that the first and third elements are satisfied; the only disputed issue is whether the two cases involve the same cause of action.

Plaintiffs argue that their § 1983 claim is a different cause of action than their state claims because the state case was for injunctive relief and the federal case is for money damages. However, the test for whether different causes of action exist does not depend on the form of relief sought. See Clarke v. Redeker, 406 F.2d 883, 885 (8th Cir. 1969) (precluding § 1983 action for damages because earlier action seeking injunctive relief on essentially the same facts had already been adjudicated). Rather, the relevant test under Minnesota law for determining whether two suits involve the same causes of action is to examine whether both actions arise from the same nucleus of facts. See Anderson v. Werner Continental, Inc., 363 N.W.2d 332, 335 (Minn. Ct. App. 1985), rev. denied (Minn. June 24, 1985); see also Beutz v. A.O. Smith Harvestore Prod., Inc., 431 N.W.2d 528, 533 (Minn. 1988) (finding the same cause of action when two claims involve "the same set of factual circumstances"); Amalgamated Meat Cutters & Butcher Workmen v. Club 167, Inc., 204 N.W.2d 820, 821 (Minn. 1973) (holding that the test is whether the "same evidence will support both judgments"); Melady-Briggs Cattle Corp. v. Drovers State Bank, 6 N.W.2d 454, 457 (Minn. 1942) (holding that a former judgment precludes a successive action if the same evidence will sustain both actions).

Here, the same nucleus of facts forms the basis for Plaintiffs' state claims and Plaintiffs' § 1983 claim. In fact, Plaintiffs' federal Complaint states verbatim the facts recited in the state court complaint. Where both complaints contain similar facts, both actions clearly arise from the same evidence or nucleus of facts. See Nitz v. Nitz, 456 N.W.2d 450, 451-52 (Minn. Ct. App. 1990). Moreover, the undisputed facts put forth by both parties in their respective memoranda, as summarized in Part I of this Order, form the same evidence that was before the state court. This Court accordingly finds that the alleged damages resulting from the § 1983 claim are founded on the same facts and events supporting Plaintiffs' injunction lawsuit in state court.

Furthermore, a plaintiff is required to assert all alternative theories of recovery in the initial action. See Dorso Trailer Sales, 482 N.W.2d at 774 (citation omitted). In the present case, Plaintiffs actually did initially include the § 1983 claim in their state court complaint, but voluntarily dismissed it when Defendant indicated its intent to remove to federal court. Thus, it is apparent that not only "might have" Plaintiffs asserted all theories of recovery in the state court action, see, e.g., Veline, 66 N.W. at 142, but did. Plaintiffs admitted at the motion hearing that they dismissed the federal claim only as a tactical maneuver to remain in state court. Plaintiffs cites no authority for the proposition that a party

who chooses to remain in a preferred forum is exempt from the application of res judicata. The United States Supreme Court has explained that "it is more important to give full faith and credit to state court judgments than to ensure separate forums for federal and state claims." Migra, 465 U.S. at 84. In particular, where a plaintiff has both state and federal claims based on the same facts, § 1983 does not guarantee a right to obtain an adjudication on state claims and then to proceed to federal court on the federal claims. See id. at 85.

The Court determines that there is no genuine issue as to any material fact, and that based on the undisputed facts, Defendant is entitled to summary judgment as a matter of law. Res judicata bars Plaintiffs' § 1983 claim, and Defendant's motion for summary judgment is therefore granted.

**C. Whether Plaintiffs Have Established Essential Elements of Their § 1983 Claim.**

Even if res judicata did not preclude Plaintiffs' claim, this Court concludes that Plaintiffs have failed to establish elements of their claim as required by Celotex Corp. v. Catrett, 477 U.S. 317 322 (1986). Generally, a plaintiff proceeding under 42 U.S.C. § 1983 must show (1) conduct by a person acting under color of state law, and (2) deprivation of rights, privileges, or immunities under the Constitution or federal law as a result of the conduct. See Dubose v. Kelly, 187 F.3d 999, 1002 (8th

Cir. 1999) (quoting Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled on other grounds by Daniels v. Williams, 474 U.S. 327 (1986)). Plaintiffs claim two protected property interests: the conditional use permit, which implicates substantive due process, and the right to just compensation.

**1. Plaintiffs' Substantive Due Process Claim.**

Plaintiffs do not allege that the City's procedures were unfair and dilatory, but that the City's actions with respect to the CUP were arbitrary, capricious, and based on legally insufficient reasons; therefore, Plaintiff's claim is based on substantive due process rather than procedural due process. See generally Queen Anne Courts v. City of Lakeville, 726 F. Supp. 733, 735, 736 (D. Minn. 1989). Defendant Long Lake replies that Plaintiffs cannot show a deprivation in any interest because they were allowed to continue business operations and to keep the six-foot fence. The City's revocation of the CUP was never enforced, and the City was permanently enjoined from doing so.

To prevail on a substantive due process claim, Plaintiffs must first establish a protected property interest. See Ellis v. City of Yankton, 69 F.3d 915, 917 (8th Cir. 1995) (citation omitted). The parties agree that Plaintiffs have a protected property interest in the CUP.

Second, Plaintiffs must show that the City's actions were "truly irrational," which is "'something more than . . . arbitrary,

capricious, or in violation of state law.'" Bituminous Materials, Inc. v. Rice County, Minn., 126 F.3d 1068, 1070 (8th Cir. 1997) (quoting Chesterfield Dev. Corp. v. City of Chesterfield, 963 F.2d 1102, 1104 (8th Cir. 1992)); see also Lemke v. Cass County, 846 F.2d 469, 472 (8th Cir. 1987) (Arnold, J., concurring) (four other judges joining and concurring that a zoning decision would not give rise to a substantive due process claim unless the decision was "truly irrational," such as a decision made by flipping a coin); Queen Anne Courts, 726 F. Supp. at 738. In Queen Anne Courts, the zoning dispute was found to be "run-of-the-mill" even though the plaintiff alleged that the city unlawfully attempted to eliminate its business, a mobile home park, which was a nonconforming use; succumbed to neighborhood opposition; disregarded its own studies and zoning ordinances; and had no grounds for precluding the landowner from expanding the business. See 726 F. Supp. at 738. The court ultimately found that none of the allegations rose to the level of a substantive due process claim. See id. The Eighth Circuit found even allegations of "bad faith enforcement" or decisions based on "personal animus" do not rise to a substantive due process violation. See Bituminous Materials, 126 F.3d at 1070-71.

In the present case, Plaintiffs Dailey and ISS claim that the City's acts were more than arbitrary and capricious because the City made

a concerted effort to use its zoning power to force Plaintiffs to discontinue the business and "get out of town." In particular, Plaintiffs challenge the revocation of the CUP and the determination that ISS was unlawfully expanded into a junkyard. This Court finds that Plaintiffs have failed to allege a sufficient substantive due process claim. Plaintiffs' assertions are similar to those in Queen Anne Courts and Bituminous Materials, which were found too insubstantial to support substantive due process claims. The City of Long Lake's actions were motivated by a permissible desire to reorient the industrial park, by Plaintiffs' admitted noncompliance with the CUP, and by applying the the junkyard ordinance to eliminate a nonconforming use of property. The dispute between Plaintiffs and the City is nothing more than a run-of-the-mill zoning dispute, and Plaintiffs have failed to establish that the City acted truly irrationally. As a result, Plaintiffs' substantive due process claim under § 1983 fails as a matter of law.

**2. Plaintiffs' Takings Claim.**

Plaintiffs also contend that the City's actions constitute a taking without just compensation in violation of the Minnesota Constitution, Minn. Const. art. I., § 13. (Pl. Mem. Opp. Mot. Summ. J. at 20.) The purported factual basis for Plaintiffs' claim is that the City attempted to "redevelop Plaintiffs' property from a permitted industrial use

to a commercial 'business park,' without compensating Plaintiffs therefor . . . ." (Id.) Plaintiffs then accuse the City of using "subterfuge" to force them to "leave town." (Id.) Other than these two sentences, Plaintiffs offer no evidence, law, or argument in support of their takings theory.

This Court finds that Plaintiffs fail to show that there was an actual taking of a property interest. Plaintiffs admit that the City's actions were only attempts to "redevelop" the ISS property, and moreover, the revocation of the CUP was never actually enforced. The six-foot fence remained on the property, and the City is permanently enjoined from revoking the CUP. In the first paragraph of their Memorandum, Plaintiffs explicitly state that the City was "unsuccessful" in its attempt to employ or change land use controls with respect to Plaintiffs' property. (Pl. Mem. Opp. Mot. Summ. J. at 1.) Plaintiffs do not allege that they were denied any economic or productive use of the property. See, e.g., Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 1017 (1992); Nollan v. California Coastal Comm'n, 483 U.S. 825, 834 (1987). In fact, Plaintiffs continued to conduct their business as usual during all of the relevant events. Accordingly, as a matter of law, the Court finds that Plaintiffs have not shown a taking of a property interest in this case. Moreover, because the City never rezoned the property or halted Plaintiffs' business activity, the Court finds that no damages can be attributed to the alleged taking. See

Browning-Ferris Indus. of St. Louis, Inc. v. City of Maryland Heights, Mo., 747 F. Supp. 1340, 1349-50 (E.D. Mo. 1990). Consequently, for all of the above reasons, Plaintiffs' takings claim pursuant to § 1983 also fails as a matter of law.

Based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED:**

(1) Defendant City of Long Lake's Motion for Summary Judgment (Doc. No. 11) is **GRANTED**; and

(2) Plaintiffs Daniel Dailey and Insurance Salvage Services, Inc.'s Complaint is **DISMISSED WITH PREJUDICE.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: December 18, 2000

JONATHAN LEBEDOFF
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

**DATE MAILED TO COUNSEL/PRO SE PARTIES:**

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information must be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*

Forms/8thcircuitprehearingconf.wpd